THE STATE OF MISSOURI, Respondent, v. WILLIAM MORGAN, Appellant.

February 14, 1876.

1. Where evidence requiring a formal foundation was introduced without such foundation, no objection on that account having been made at the

time by the opposing party, and it is apparent from the circumstances that the foundation could readily have been laid, no objection because of its omission can be presented in the appellate court.

2. If testimony be offered in a form, or for a purpose, which would make it inadmissible, the court is warranted in rejecting it, although part of it might be admissible for a different purpose. The party offering must disincumber the evidence of illegal matter, and confine himself to that which is legal; otherwise, the whole should be excluded.

3. When it is proposed to impeach a witness, by showing former statements inconsistent with his testimony on a matter relevant to the issue, his attention must be called with particularity to the supposed former statement.

4. Upon a motion, supported by affidavits and opposed by counter-affidavits, for a new trial, on the ground of misconduct of the officers of the court, which, if it existed at all, must have been witnessed by the judge, great weight will be attached in the appellate court to the decision of the court below. In such cases the latter is almost the final arbiter.

APPEAL from the St. Louis Criminal Court.

*Affirmed.*

*S. D. McCormack*, for appellant, cited : State *v.* Shields, 13 Mo. 236 ; Day *v.* State, 13 Mo. 422 ; State *v.* White, 35 Mo. 500 ; Deer *v.* State, 14 Mo. 348 ; State *v.* Boswell, 2 Dev. 209 ; McComb *v.* State of Ohio, 8 Ohio St. 643 ; Ros. on Cr. Ev. sec. 716 ; 1 Ph. on Ev., sec. 762 ; Evans *v.* Smith, 5 Mon. 363 ; Peck *v.* State, 2 Humph. 78 ; Miller *v.* The People, 39 Ill. 459 ; State *v.* Merrell, 2 Dev. 269 ; State *v.* Dominique, 30 Mo. 585 ; McMillen *v.* State, 13 Mo. 30 ; McDaniels v. State, 8 Smed. & M. 401 ; People *v.* Greene, 1 Park. (N. Y.) Cr. 11 ; People *v.* Knickerbocker, 1 Park. (N. Y.) Cr. 302 ; Hill *v.* Commonwealth, 2 Gratt. (Va.) 594 ; Smith *v.* State, 9 Humph. 9 ; Montgomery *v.* State, 11 Stan. (O.) 424 ; State *v.* Mansfield, 41 Mo. 470 ; State *v.* Bird, 1 Mo. 585 ; Davis *v.* State, 2 Humph. 439 ; State *v.* Jones, 2 Bay (S. C.), 520 ; Keither v. State, 10 Smed. & M. 192 ; Cochran *v.* State, 7 Humph. 544 ; State *v.* Connell, 49 Mo. 282 ; State *v.* Sims, Dudley (Ga.), 213 ; State *v.* Sartor, 2 Strobh. (S. C.) 60 ; United States *v.* Duval, Gilp. 356 ; State *v.* Hammond, 5 Strobh. (S. C.) 91 ; State *v.* Packwood, 26 Mo. 340 ; Copeland *v.* State, 7 Humph. 479 ; State *v.* Cruise, 16 Mo. 391 ; Gray-

son *v.* Commonwealth, 7 Gratt. (Va.) 613 ; State *v.* Lyon, 12 Conn. 487 ; State *v.* Fisher, 2 Nott & M. (S. C.) 261 ; State *v.* Prescott, 7 N. H. 287 ; Berry *v.* State of Georgia, 10 Ga. 511 ; 3 Whart. Cr. Law, secs. 3157–3160 ; State *v.* Hascall, 6 N. H. 353 ; Yoe *v.* People, 49 Ill. 410 ; Witehum *v.* State, 11 Ga. 615 ; Fuller *v.* Scott, Whart. Dig. 355 ; McLean *v.* State, 8 Mo. 153 ; Weber *v.* State, 22 Mo. 321 ; McKinney *v.* The People, 2 Gilm. (Ill.) 541 ; Gibbons *v.* The People, 23 Ill. 518 ; Bolls *v.* State of Mississippi, 13 Smed. & M. 398 ; Hale *v.* State, 4 How. (Miss.) 187 ; Commonwealth *v.* Wormly, 8 Gratt. (Va.) 712 ; McLain *v.* State, 10 Yerg. 241 ; Perkins *v.* Knight, 3 N. H. 474 ; McCann *v.* State, 9 Smed. & M. 465 ; Kirk v. State of Ohio, 14 Ohio, 511 ; Jumpertz *v.* The People, 21 Ill. 409.

*W. F. Rogers,* for appellant, cited : 1 Greenl. on Ev., sec. 158 ; Smith *v.* State, 9 Humph. 9 ; 2 Stark. on Ev. 460 ; State *v.* Shields, 13 Mo. 236 ; Deer *v.* State, 14 Mo. 348 ; Norris *v.* State, 16 Ala. 776 ; State *v.* Cushing, 29 Mo. 215 ; Fisher *v.* People, 23 Ill. 283 ; Hobbs *v.* People, 31 Ill. 385 ; State *v.* Felter, 25 Iowa, 67 ; Stevens *v.* State, 31 Ind. 485 ; McFarland's Case, 8 Abb. Pr. (U. S.) 69 ; Harris' Case, 22 Am. Jour. Insanity, 334 ; Commonwealth *v.* Haskell, 2 Brews. (Pa.) 491 ; Smith *v.* Commonwealth, 1 Duv. (Ky.) 224 ; State *v.* Pike, 49 N. H. 399 ; Ray's Med. Jur., sec. 44 ; Hines *v.* State, 8 Humph. 597 ; Berry *v.* State, 10 Ga. 511 ; 1 Park. (N. Y.) Cr. 256.

*J. C. Normile,* Circuit Attorney, for respondent, cited : People *v.* Sanchez, 4 Park. (N. Y.) Cr. 555, 556 ; State *v.* Klinger, 46 Mo. 220 ; People *v.* Thurston, 2 Park. (N. Y.) Cr. 49 ; State *v.* Holme, 54 Mo. 164 ; State *v.* Hundley, 46 Mo. 417 ; State *v.* Connell, 49 Mo. 282 ; State *v.* Cook, 58 Mo. 545 ; State *v.* Floyd, 15 Mo. 349 ; State *v.* Smith, 31 Mo. 566 ; Beale *v.* Cullum, 31 Mo. 258 ; State *v.* Dunn, 18 Mo. 419 ; State *v.* Crawford, 34 Mo. 200 ; State *v.* Smith, 53 Mo. 267.

GANTT, P. J., delivered the opinion of the court.

William Morgan was convicted of the murder of his wife, at the March term, 1875, of the St. Louis Criminal Court. Several exceptions were saved at the trial to the admission and exclusion of evidence, and some objections are urged in this court in respect of which no exception was saved. We enumerate them in their order.

1. Mrs. Rose, a sister of the deceased, was examined by the State, and among other things, speaking of her sister, she said : " She stated, just before her death, ' Morgan has stabbed me ; what will become of our child?' " No objection was made to this evidence at the time. A point is made on it in this court.

2. On cross-examination of Mrs. Rose, defendant's counsel " offered to prove by her that deceased and herself left their homes, procured a house on Fifteenth street, and were keeping, under assumed names, an open and notorious house of prostitution, and that defendant's infant daughter, contrary to his wishes and without his knowledge or consent, was kept by her mother in said house ; that this testimony was sought to be introduced for the double purpose of affecting the credibility of the witness and also as having a tendency to affect defendant's mind ; the facts of the prostitution of deceased and witness having been brought to his knowledge by a discovery of their whereabouts." The court refused this offer and defendant's counsel excepted.

3. Defendant's counsel asked the following questions, which the court excluded, defendant excepting :

" What business, if any, were you and Mrs. Morgan engaged in while you resided at the house on Fifteenth street, and what was the business of Mrs. Mills, and were you not engaged in the business of prostitution, and how long did yourself, Mrs. Morgan, and Mrs. Mills continue in such business at that house?

" Did not Mrs. Morgan, the deceased, abandon her husband, and was she not at the time of her death, and for

weeks previous, in an open and notorious state of adultery with one Stevens, the man in whose company she was on the day of the alleged homicide, and were she and said Stevens, at the time of said homicide, not engaged in purchasing second-hand furniture for the purpose of furnishing a house of prostitution to be kept by Stevens and deceased?"

4. Counsel for defendant sought to show by witness that there was a conspiracy formed between witness, Mrs. Morgan (the deceased), and said Stevens, and other persons of immoral character, to defraud defendant of his property and to prevent him from recovering possession of his infant daughter, aged eleven years, who was then in the custody of said parties, and by them kept in a house of prostitution. The court excluded such evidence, and defendant excepted.

5. In the course of Mrs. Rose's examination-in-chief, she stated, without objection, referring to her sister : " She had made application for a divorce." After the close of her examination the circuit attorney made an effort to show that a petition for a divorce had been filed by Mrs. Morgan in the St. Louis Circuit Court. The defendant objected to this for irrelevancy. The court overruled the objection, and defendant excepted. It does not appear that the circuit attorney followed up his offer and gave any such evidence.

6. Defendant offered to prove by one of his own witnesses " that Mrs. Morgan, Mrs. Rose, and Stevens had been to her house a short time, four or five days, before the homicide ; that they seized hold of Morgan, the defendant, and, in his efforts to escape from them, tore a good portion of his clothes from his person ; that he fled from them in great terror, and that the effect of said assault upon the defendant was to greatly aggravate his afflicted condition." The court refused this offer, defendant excepting.

7. By another witness he offered to prove " that Mrs. Rose and Mrs. Morgan were prostitutes, and were keeping a house of prostitution on Fifteenth street, in connection with

other lewd women and persons of immoral character; that they had defendant's child in their custody, and were conspiring against the life of the defendant." The court refused this offer, defendant excepting.

8. By another witness defendant offered to prove " that the statements made by Mrs. Rose, on the stand, in regard to her conversations at Mr. Rogers' office, on those occasions, were false in every particular." The court excluded this evidence, defendant excepting.

9. Dr. C. H. Hughes, a physician, having testified that he had been present in court during the whole trial, except while the two first witnesses testified, was asked, " as a medical expert," to state his opinion in regard to the sanity of the defendant during the month of July, 1874, and about the time of the alleged homicide." The court refused to allow the question in that form, and directed the defendant counsel to ask the witness a hypothetical question, reduced to writing. The defendant excepted, and asked for an hour in which to prepare such a hypothetical question. The court refused to allow more than half an hour; and defendant again excepted. But the court, in point of fact, allowed his counsel two hours for this purpose. The hypothetical question was prepared, and the expert was examined upon it at length.

10. The evidence being closed, the court gave a series of instructions, to which defendant excepted, and defendant asked five instructions which the court refused, defendant excepting.

11. The jury having found a verdict of guilty of murder in the first degree, defendant's counsel filed a motion for a new trial, assigning as reasons for it:

1. The admission of improper evidence.
2. The exclusion of proper evidence.
3. The giving of improper instructions.
4. The refusal of proper instructions.
5. That the verdict was against evidence.

6. That the circuit attorney was guilty of misbehavior.

7. That the court was guilty of misbehavior.

Affidavits were filed in support of the two last reasons.

1. We consider the first point made untenable. If defendant wished to exclude this statement of deceased, on the ground that a foundation had not been laid for the introduction of a dying declaration, he should have interposed an objection, or moved to strike it out until such a foundation was laid. But the words used seem to render such formal evidence unnecessary. They plainly indicate the anxiety felt by a parent as to her child, about to be left an orphan. It seems wholly unnecessary to accumulate evidence to show that she considered herself on the point of death. Obviously there would have been no° difficulty in making such proof, and the failure to object concedes this; besides, the only effect of this statement of Mrs. Morgan was to connect Morgan with the killing. The record shows that this had been already proved in the most unequivocal manner by several eye-witnesses of the deed. It had been committed in open day, in one of the most public places of the city, and before many spectators. The agency of Morgan in causing the death of deceased was not denied, and certainly was not open to denial.

2. We also consider the second point untenable. If the counsel for defendant had confined his question to showing that the witness was unchaste, he might have asked it for the purpose of discrediting her. *State of Missouri* v. *Shields*, 13 Mo. 236. But, clearly, the scope of the offer made was much wider. It sought to involve the deceased as well as to implicate the witness. The offer was made as a whole. We do not think the court was wrong in omitting to inform defendant's counsel that a question directed to part of what they proposed would be permitted. The accused was represented by able and zealous advocates, who must be presumed to have known that a question directed to a single point, and for a single purpose, would

have a different reception. What they offered to prove was a mass of facts directed to two purposes. One of the purposes was wholly illegitimate, and the greater part of the facts was unsuited to the accomplishment of the other and legitimate purpose. By the persistent effort made to accomplish the purpose forbidden by the law, and the omission to attempt otherwise to prove matters tending to accomplish the lawful purpose, we are forced to infer that the former was the principal aim of the defendant's counsel. The offer, as made, was liable to objection—was inadmissible ; when the court so declared, no attempt was made to modify it, and until this was done the court was justified in rejecting the offer.

3. The two questions proposed were the means by which, if his offer had been allowed, the defendant proposed to make it good. They are, for the reasons already given, inadmissible. No doubt can, we think, exist that their form and structure demonstrate the principal object which defendant's counsel sought to accomplish by putting them.

4. The court rightly excluded evidence of a conspiracy between Mrs. Rose, the deceased, and others for the purpose supposed by the counsel for the defendant. This could have been admissible for no purpose desirable for the prisoner. If such a state of things had existed, and had come to the knowledge of the prisoner, its only effect would have been to irritate him and cause him to entertain feelings of resentment towards those engaged in it. If the State had offered this evidence, in order to impute malice to the accused, it might have been relevant.

5. After Mrs. Rose had been questioned as to what she had said to Mrs. Jewell on the day when this case was last continued, the counsel for defendant examined several witnesses for the purpose of contradicting what she had said, on the stand, of what passed on that occasion. This was done without objection on the part of the State. But defendant's counsel offered further to prove " that the state-

ments made by Mrs. Rose, on the stand, in regard to her conversation at Mr. Rogers' office, on those occasions, were false in every particular." The State objected, and the court excluded this evidence, defendant excepting.

The court acted properly. The record is wholly silent respecting any "statements made by Mrs. Rose in regard to her conversations at Mr. Rogers' office." It is useless to attempt to account for this omission. Whether the defendant's counsel was mistaken in supposing that any such statements were made, we need not determine. It is enough that on this head the record shows no error. Nothing is better settled than that, if the object be to discredit a witness, by showing that a former statement by him, on a matter relevant to the issue, differs from what he said on the same subject on the stand, the attention of the witness must be called with all particularity to the supposed former statement. If the matter inquired of be not relevant to the issue, the examiner is concluded by the answer which the witness makes. We have no means here of knowing what Mrs. Rose said of what occurred at the office of Mr. Rogers, and, of course, we cannot say whether or not it was relevant to the issues in this cause. The court properly refused the proposed offer.

6. In the course of her examination-in-chief, Mrs. Rose testified that her sister " had made application for a divorce." No objection was made to this. When Mrs. Rose was dismissed, the circuit attorney offered to show that the deceased had filed a petition for a divorce in the St. Louis Circuit Court. The defendant's counsel objected to this for irrelevancy. The court overruled his objection, and he excepted. It does not appear, however, that the circuit attorney gave the evidence the objection to which the court overruled.

The fact was already before the jury without objection, and we see no objection to it that would in any point of view warrant the disturbance of this judgment. Either the

matter was harmless, or (and we incline to this opinion) its tendency was to show that the prisoner's right to meddle with his wife was not that which ordinarily results from the marriage relation. It was, we think, unnecessary to make proof of this fact; but, whether it was proved or not (and the record does not inform us), its admission was not error.

7. The defendant's counsel wished to show that an encounter of a disagreeable kind had taken place, four or five days before the homicide, between the prisoner and his wife, Mrs. Rose, and Stevens

The Criminal Court refused to permit this, and defendant excepted. We are at a loss to understand the theory on which the defendant's counsel complain of this refusal. There was certainly no error in it.

8. The Criminal Court made the proper direction as to the examination of Dr. Hughes. The objection that the court refused to allow more than half an hour for the preparation of the hypothetical question to be put to this medical expert surely falls when, as we see by the record, the court gave defendant's counsel *two* hours, which is twice as much time as they asked for. It is but just to the defendant's counsel to remark that, though this objection was made below, it is not pressed by them in this court, but it is prominently mentioned in the affidavit of Dr. Hughes, to be presently mentioned.

9. The first two reasons assigned in the motion for a new trial have been already disposed of. As to the third, we think it sufficient to say that the instructions given by the court appear to us unexceptionable, and that the counsel for the accused have not pointed out any error in them. We perceive none.

10. The instructions refused are plainly erroneous. We do not analyze them in detail, because to do so would force us to repeat much that has been already said, and because no point has been made on any of them in argument before us.

11. We are compelled to regard the assignment of the fifth reason in the motion for a new trial as a signal illustration of the degree to which advocacy may blind the judgment. No impartial person, we think, can read this record without being satisfied that on July 27, 1874, William Morgan, the prisoner, stabbed his wife repeatedly, and with every circumstance tending to show premeditation and malice, in a very public place in the city of St. Louis, in the presence of many spectators. We do not care to dwell upon the sickening details; but they force us to one of two conclusions: Either the man was a maniac, bereft of reason and unconscious of what he did, or he was guilty of brutal and revolting murder. His able counsel saw this dilemma plainly, and interposed the defense of insanity. After a patient hearing of all the evidence on this subject, the court submitted it to the jury, with instructions which are not seriously criticised. The jury regarded the evidence as wholly insufficient to sustain the theory of the defense; and we entirely agree with the jury in their conclusion. It is almost an affront to the understanding to be told that, in the case shown by this bill of exceptions, the homicide was committed by a person unable, through mental disorder, to distinguish between right and wrong.

12. In support of the sixth and seventh reasons for a new trial are filed the affidavits of John M. Wirts, an attorney; C. H. Hughes and S. B. Houts, physicians; Stephen Arnold, L. T. Smith, John Hyde, and W. E. Howe. Mr. Normile filed a counter-affidavit.

We will not quote the contents of these affidavits. They fail entirely, we think, to sustain the motion in aid of which they are filed. They display zeal, bad temper, and want of proper respect for the Criminal Court; and, by the aid of the record and the counter-affidavit of Mr. Normile, we are able to see that both the court and the circuit attorney have been accused without just cause. Whenever these affidavits depart from the style of general denunciation which

characterizes especially those filed by the medical witnesses, and make charges of any definiteness, they are refuted by the record and Mr. Normile's counter-affidavit. Indeed, the latter goes out of his way to disprove an aspersion for which one of the affiants, on the face of his statement, had nothing but gratuitous suspicion. Dr. Hughes dwells, in his affidavit, on the hardship of the court refusing to defendant's counsel an hour in which to prepare the hypothetical question suggested; but the record shows that the court actually allowed two hours for this purpose, or twice as much as counsel asked for. As this affidavit was made after the verdict, it is clear that Dr. Hughes must have known this.

The matters of these affidavits had all come under the notice of the court at the trial. It had heard and seen all of which they spoke, except some trivial things which are abundantly answered by Mr. Normile's counter-affidavit. The Criminal Court overruled the motion founded on these affidavits, and, in so doing, negatived the existence of the matters therein charged. We attach great weight to this action of the court. In respect of the whole business to which these affidavits refer, the court of first instance is almost the final arbiter. It had a far better opportunity of determining whether the things charged in the affidavits really existed, or were the mere product of heated partisanship, than we can have. No written narrative can convey to an appellate court a picture nearly so truthful and vivid of what occurred at the trial as that which was presented by the actual occurrences. For this reason an appellate court would be very slow to review the action of the Criminal Court in such a matter as that under discussion. To warrant such an interference a very strong case should be shown. In the present instance this is not done. From all that we can see, we remain convinced that the St. Louis Criminal Court on this occasion gave to the accused a full, fair, patient, and impartial trial. No guard erected by the

law for the protection of innocence was beaten down; no evidence of guilt was admitted except in strict conformity to the law.   With the judgment finally given we entirely concur, and, all the judges concurring, order it to be affirmed.

