STATE of Missouri, Respondent,

v.

Thomas A. McLACHLAN, Appellant.

No. 44833.

Supreme Court of Missouri.

Division No. 2.

Nov. 14, 1955.

---◆---

Howard Maness, Doniphan, Charles T. Bloodworth, Jr., Poplar Bluff, for defendant.

John M. Dalton, Atty. Gen., Harold L. Volkmer, Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Thomas A. McLachlan was convicted of an assault with malice aforethought with a deadly weapon with intent to kill. Section 559.180 RSMo 1949, V.A.M.S. The assault occurred in Butler county. Defendant was granted a change of venue to Ripley

county, and upon his application to disqualify the regular judge of the court, the Honorable Arthur U. Goodman, Judge of the Twenty-Second Judicial Circuit, was called in to try the case. The jury returned a verdict of guilty and assessed the punishment at two years imprisonment. Judgment was entered accordingly. Upon appeal, defendant complains of the giving and refusing of instructions and the exclusion of certain testimony.

John Huff was 63 years of age and a deputy sheriff of Butler county. About 2:00 or 3:00 p. m. June 25, 1954, he had a summons issued out of the Circuit Clerk's office to serve on defendant. Defendant was 75 years of age and lived alone in a 12 by 12 foot house on "White Row" on the bank of Black river in Poplar Bluff, Missouri. Huff had known defendant for about two years by the nickname of "Shorty," but did not know defendant's true name. The door to defendant's house was open. Huff walked in, said "Hi, Shorty," and asked defendant if his name was McLachlan. Defendant answered that it was. He told defendant he was a deputy sheriff and had a summons for defendant. Defendant got up, let the papers fall on the floor, and began cursing, calling Huff vile names and telling him to get out of the house. Huff immediately started backing out of and away from the house. Defendant testified that he picked up his .22 caliber repeating rifle after Huff backed through the door, and he told him to "keep going and don't come back." Huff testified he was about 25 or 30 feet from the house when he first saw that defendant, standing at the door, had a gun, and defendant, without warning that he was going to shoot, shot him through his left thumb when he was about 30 to 40 feet from the house. Huff, backing, fell over something and as he started to get up he pulled out his 32/20 Smith and Wesson revolver and fired one shot at but missed defendant. About the same instant defendant shot again and the bullet struck Huff in his right hip and entered his abdomen. Huff ran down the bank of the Black river to get away from defendant. Later in the day he was taken to the Veterans Hospital,

and was not released until September 28, 1954. About one inch of his left thumb is missing.

Several witnesses corroborated Huff's testimony, one being an eyewitness to what happened outside of defendant's house.

There was testimony that Floyd Rhodes' brother owned property fronting on a street on the bank of the Black river. Floyd Rhodes appeared before the city council on behalf of his brother, who was ill, and asked that the squatters be moved from the river bank. At the city election in April, 1954, Floyd Rhodes and defendant had trouble. Defendant testified that Rhodes threatened to do him great bodily injury. Rhodes denied this, but stated they had had an argument and defendant had threatened him.

Defendant's testimony was to the effect that he was sitting by a table about half asleep when Huff walked in; that Huff did not inform him he was a deputy sheriff; that when Huff handed him the papers, defendant thought it was Floyd Rhodes, with whom he had had trouble and who had been trying to run them off of the river bank; that, after he picked up his rifle and Huff had backed out of the house, Huff fired the first shot; that four shots were fired, two by defendant and two by Huff, and that he did not know he had shot Deputy Sheriff Huff until he was so informed some time after the shooting. A written statement given by defendant and read in evidence was to like effect.

During his cross-examination, John Huff was asked: "What is your feeling toward Mr. McLachlan at the present time? A. I don't feel any too good toward him. Q. You have felt very bad at him ever since this happened? A. I sure have." Following this, defendant's counsel, out of the hearing of the jury, made a general offer of proof for the purpose of affecting the witness' credibility that sometime after the shooting the witness and defendant met in the courthouse at Poplar Bluff and the witness started to draw his pistol and assault defendant; that the circuit judge stepped between the two and prevented trouble, and that the judge took the prosecuting witness

to his office and told him what would happen if he shot defendant. The court sustained an objection to the offer, stating the witness had admitted his ill will toward defendant and the offer as outlined was objectionable.

Defendant contends the court erred in refusing his offer of proof, citing Gurley v. St. Louis Transit Co., Mo.App., 259 S.W. 895, 898 [5–7]; Silberman v. Hicks, Mo.App., 231 S.W.2d 283, 285 [5, 6]; Knapp v. Knapp, Mo., 183 S.W. 576, 578 [7, 8]. The State does not question the general rule that a party or witness is subject to cross-examination to establish his bias, interest, or prejudice for the purpose of affecting his credibility and, if the witness deny such feeling, evidence may be introduced contradicting the witness. 70 C.J. 990, §§ 1197, 1200 et seq.; 58 Am.Jur. 386, §§ 715, 716, 787; 3 Wharton's, Criminal Evidence, 11th Ed., 2235, § 1354; 3 Wigmore, Evidence, 3d Ed., 498, § 948 et seq. We think inquiry as to trouble or a quarrel between the witness and defendant on the occasion referred to permissible as bearing on the degree of estrangement between the two; but inquiry into the details embraced within the offer not proper. Barraclough v. Union P. R. Co., 331 Mo. 157, 52 S.W.2d 998, 1001 [4]. Trial courts have some discretion in ruling on testimony of this nature. State v. Rose, 339 Mo. 317, 96 S.W.2d 498, 504 [6, 9]. It is not the duty of the trial court to separate the admissible from the inadmissible evidence where an offer of proof is partly admissible and partly inadmissible. The whole may be rejected. State v. Morgan, 1 Mo.App. 22, 28(2); Eller v. Crowell, Mo., 238 S.W.2d 310, 313 [3]; 23 C.J.S., Criminal Law, § 1031, p. 408; 53 Am.Jur. 88, § 99, n. 9. Furthermore, the instant record established that defendant had assaulted, shot, and severely injured the prosecuting witness; and the witness admitted that his feeling toward defendant had been "very bad" ever since the occurrence. The witness' answer was an obvious one and we find no prejudicial error constituting a ground for reversal.

Instruction No. 4–P was the State's main instruction under which defendant was convicted. The court refused requested instruction No. 4–D, which purported to submit the defense of self-defense upon the theory that in shooting Huff defendant thought he was exercising his right of self-defense and protecting himself against threats of great bodily harm made by Floyd Rhodes.

Defendant, in his brief filed here, makes the "point": "The Court erred in giving instruction No. 4–P," citing no authority in support of the assertion. The "point" may be good as an assignment of error, but it fails to point out any vice in instruction No. 4–P and does not present any issue for review. 42 V.A.M.S. Sup.Ct. Rule 1.08(a) (3); State v. Bird, 286 Mo. 593, 228 S.W. 751, 752 [1]; Daugherty v. Maddox, Mo., 260 S.W.2d 732, 734 [1–3]. Consult Sup.Ct.Rule 27.20, Section 547.030, RSMo 1949, V.A.M.S.; State v. Mayberry, Mo., 272 S.W.2d 236, 242 [17, 18, 22]; State v. Gaddy, Mo., 261 S.W.2d 65, 67 [2–4].

Defendant's complaint is not that instruction No. 4–P is erroneous but that the giving of instruction No. 4–P and the refusal of instruction No. 4–D deprived defendant of his theory that he was defending himself against Floyd Rhodes. Defendant cites State v. McDonald, 7 Mo.App. 510; State v. Tritch, 175 Mo.App. 262, 266, 157 S.W. 843, 845 [1]; and Ekstan v. Herrington, Mo.App., 204 S.W. 409 [1], and argues (quoting): "that 'crime cannot exist without a criminal intent.'" Assuming the stated point is properly preserved for review, instruction 4–P precluded the return of a verdict of guilty without findings that defendant assaulted Huff with a dangerous and deadly weapon, so far as material here, "on purpose, feloniously, with malice aforethought, and with intent to kill" et cetera. In addition, given instruction No. 1–D (evidently requested by defendant) informed the jury in general terms, among other things, that defendant was entitled to act on the reasonable appearances to protect himself against great personal injury; was justified, upon reasonable belief, in acting in self-defense, although the danger in reality did not exist; and had the right to use such

force as was reasonably necessary to repel his assailant. Under given instruction No. 1–D the defense of self-defense was available to defendant whether his assailant was Floyd Rhodes, as defendant believed, or John Huff, the person whom defendant shot; and, being covered by the given instructions defendant may not successfully complain. State v. McNeese, Mo., 284 S.W. 785, 787 [7]; State v. Mahan, Mo., 267 S.W. 866, 868 [7]; State v. Green, 331 Mo. 723, 55 S.W.2d 965, 967 [3].

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.