# Richmond.

## WADLEY v. COMMONWEALTH.

### MARCH 15, 1900.

### Absent, Buchanan, J.

1. CRIMINAL LAW—*Indictment—Evidence Before Grand Jury.*—The sufficiency of the proof upon which a grand jury finds an indictment cannot be inquired into on a motion to quash the indictment.

2. CRIMINAL LAW—*Discharge from Prosecution—Injunction Against Prosecution—Time Not Counted.*—A prisoner is not entitled to be discharged from prosecution on the ground that four regular terms of a county court elapsed after the indictment was found without a trial, where the trial was prevented by an injunction from a Federal court obtained at the instance of the prisoner. While such an injunction is not among the exceptions enumerated in the statute providing for such discharge, it· is within its spirit and reason. The object of the statute is to insure speedy trials, and, in enumerating certain exceptions, it was not intended to exclude others of like nature.

3. CRIMINAL LAW—*Embezzlement—Evidence—Value of Bonds Embezzled—Presumption of Innocence.*—In the prosecution of a prisoner for embezzlement by substituting worthless for good securities, the worthless character of the securities substituted must be shown by witnesses who are present and testify as to facts within their personal knowledge. The difficulty or even impossibility of procuring such witness cannot justify the introduction of improper evidence. The prisoner is entitled to be confronted by his accusers, and cannot be convicted on hearsay evidence or mere inferences deduced by witnesses. The presumption of innocence attaches to the proof of every circumstance necessary to establish his guilt.

4. CRIMINAL LAW—*Evidence—Bias of Witness.*—A prisoner may always show that any witness introduced against him is influenced by prejudice. It is the province of the jury to pass upon the weight

and value of evidence, and, in doing so, they are authorized to consider the temper, feeling or bias of a witness in making up their judgment as to the weight to be attached to his evidence.

5. CRIMINAL LAW—*Embezzlement.*—In a prosecution for embezzling the funds of a corporation, it is error to instruct the jury that they must find the prisoner guilty if they believe that he embezzled the funds with intent to wrong and defraud the corporation, and thereby render it unable to meet its obligations, as it is as much a crime to embezzle the funds of a solvent as of an insolvent corporation. But it is not error to the prejudice of the prisoner.

6. CRIMINAL LAW—*Embezzlement—Conversion Under Claim of Ownership.* The conversion of property under a *bona fide* claim of ownership is not embezzlement. To constitute embezzlement there must be a fraudulent intent to deprive the owner of his property.

Error to a judgment of the County Court of Wythe county, rendered December 18, 1899, whereby the prisoner was sentenced to the penitentiary for one year for embezzlement. The Circuit Court refused a writ of error, and it was awarded by this court.

*Reversed.*

The opinion states the case.

*J. C. Wysor, J. C. Blair, James L. White,* and *B. F. Buchanan,* for the plaintiff in error.

*Attorney-General A. J. Montague,* for the Commonwealth.

HARRISON, J., delivered the opinion of the court.

The plaintiff in error was tried and convicted in the County Court of Wythe for embezzlement of the assets of the Wytheville Insurance and Banking Company.

During the trial, numerous exceptions were taken to the rulings of the court, which we are now asked to review.

Before his arraignment the prisoner filed two pleas, setting forth that the indictment against him was found upon illegal and inadmissible evidence, and praying that the same might, for that reason, be quashed. This motion was properly overruled.

It is the policy of the law, in the interest of justice, that this preliminary hearing should be conducted with closed doors. This secrecy is not only consistent with, but essential to, the nature of the institution. The sufficiency of the proof cannot be inquired into to invalidate an indictment found by a lawfully constituted grand jury. The presumption is that every indictment is found upon proper evidence. If anything improper is given in evidence before a grand jury, it can be corrected on the trial before the petit jury.

Grand juries are not generally selected on account of their legal acquirements, and doubtless often act upon evidence not strictly legal. If, however, the courts are to inquire into their proceedings, few indictments would come to trial without this preliminary. Bishop's New Criminal Procedure, vol. 1, sec. 872, par. 5; 16 Conn. 457; *Ezra* v. *Beebe*, 17 Minn. 241; 3 Zab. (N. J.) 49; *Turk* v. *State*, 7 Ohio, 2 pt. 240; *Creek* v. *State*, 24 Ind. 151; *State* v. *Logan*, 1 Nev. 509.

Exception was taken to the action of the County Court in refusing to discharge the prisoner forever from presecution upon the ground that there had been four regular terms of the court, after the indictment was found, without a trial. There was no error in this ruling. It appears that the prisoner resorted to the novel proceeding of obtaining from the Federal court an injunction restraining the law officer of the State from proceeding with his trial, and prohibiting the use of certain books and records as evidence on behalf of the Commonwealth, and by this means caused the delay that he now seeks to take advantage of. The contention is that the statute does not enumerate an injunction by a Federal court as one of the causes of delay disentitling the prisoner to his discharge. It may fairly be presumed that the Legislature never contemplated such a cause of delay, and it would defeat rather than carry out the purpose of the enactment to give its language the narrow and technical meaning contended for. The sole object was to insure a speedy trial. "The

statute never meant by its enumeration of exceptions, or ex-
cuses for failure to try, to exclude others of a similar nature or
*in pari ratione;* but only to enact, if the Commonwealth was
in default for three terms without any of the excuses for the
failure enumerated in the statute, or such like excuses, fairly
implicable by the court from the reason and spirit of the law,
that the prisoner should be entitled to his discharge." *Adcock's
Case*, 8 Gratt. 661.

During the progress of the trial, the Commonwealth intro-
duced A. A. Campbell and asked him the following question:
" From your acquaintance with the suit pending in the Circuit
Court of the United States for the Western District of Virginia,
what was the value of the assets the company had when the
company went into the hands of the receiver?" To this ques-
tion the prisoner excepted, but the court overruled the exception
and allowed the witness to answer the same.

It is urged upon us that the ruling of the court was erroneous
because, if there was anything in the record referred to, properly
admissible in evidence before the jury, the record itself was the
best evidence, and should have been introduced, and not the
opinion of a witness as to what the record proved. Conceding
that this position is sound, it is, perhaps, doubtful whether or
not it is properly presented for our decision, and as substantially
the same question arises upon another bill of exceptions we for-
bear to express any opinion upon it.

In order to fix the value of certain securities known as the
Cannouchee bonds, C. B. Thomas was asked the following ques-
tion: " Have you, in any of your business, had to deal with the
bonds?" Answer: " So far as I have represented creditors and
inquired into the value of them." Question: " Have you, in that
capacity, made any effort to ascertain what assets that company
had, and what they had to insure in?" Answer: " Yes; we took
all pains to make every investigation." Question: " What, in
your opinion, was the value of those bonds?" The latter ques-

tion was objected to by the defendant, the objection was sustained, and thereupon the question was asked: "Did you get information from other sources?" Answer: "Well, I wrote to Georgia, where we understood the headquarters were. We wrote two or three letters, and I could get no information that there was any such company there." Question: "As a result of your investigation, what do you consider those bonds worth now, and what were they worth then?" Answer: "As I said awhile ago, it is hard to answer that question, as I would depend some on the deposition," referring to the deposition taken in the case pending in the Circuit Court of the United States.

At this point, the court said Mr. Thomas had better not answer the question, and then immediately follows this answer:

"Well, I made a pretty searching investigation in Georgia, and my opinion is that the bonds were not worth anything."

The prisoner thereupon moved to exclude that part of the evidence detailing the correspondence between the witness and the lawyers in Georgia, but the court refused to do so.

The importance to the prosecution of proof of the value of the Cannouchee bonds at the time they were placed with the Wytheville Insurance Company in lieu of other securities taken from it, as is alleged, and appropriated by the prisoner to his own use, cannot be questioned.

The defence rests not so much upon the denial of the existence of certain facts, as upon the interpretation which is to be given to them. Were the acts of the prisoner shown in evidence done with a guilty intent? And, as shedding light upon this issue, the value of the securities appropriated and those substituted in their stead was a matter for consideration by the jury. The prisoner is presumed to be innocent, and that presumption of innocence attaches to the proof of every circumstance necessary to establish his guilt. He is entitled to be confronted by his accusers, and inferences of his guilt or innocence from the facts proved are to be deduced, not by the witnesses, but by the jury; and,

therefore, when it became essential, in the progress of the trial, to fix the value of certain securities, witnesses should have been brought forward to testify as to facts within their own knowledge, and to permit a witness to give his opinion upon the question at issue upon information derived from his correspondence with others, was violative of the most fundamental principle of evidence. Even in a civil case it would have been inadmissible.

It was held by this court in *N. & W. Ry. Co.* v. *Reeves & McNeil*, 97 Va. 284, that newspaper quotations of market prices, the current price list of commission merchants and the statements of witnesses based upon them are hearsay, and not admissible. These facts, says the court, "should have been shown by a witness who had positive knowledge of the transaction, and the defence should have had the opportunity to cross-examine such witness."

It is urged upon us that it would have been difficult, perhaps impossible, to produce any other proof than that which was offered. The answer is that the difficulty or impossibility of proving an inculpatory fact by lawful evidence is not a foundation upon which to rest the introduction of improper evidence.

We are of opinion that the evidence should have been excluded.

It appears that C. B. Thomas, a witness introduced for the Commonwealth, represented as attorney a large amount of indebtedness against the Wytheville Insurance and Banking Company. With a view to ascertaining whether or not this witness had any bias or prejudice against the prisoner, he was asked the following questions, to which, it appears, affirmative answers were expected: " Mr. Thomas, you have been put upon the stand as a witness against the accused, and as you understand the law it has always been the privilege of the accused of crime to learn if the witness who was introduced had any prejudice against the accused. In view of this principle of law, I now ask if you did not make yourself busy before the indictment was found in

your efforts to have it made in order that you might, by the use
of this, compel the prisoner to pay debts which you represented
against the company of which he was president? "

" Did you not, before this indictment was made, make threats
against the prisoner that you would have the indictment made,
and that you would assist in the prosecution of it unless the
prisoner at the bar would pay you fifty cents on the dollar upon
the claims you had against the company?"

It was error to sustain the objection made by the Common-
wealth to these questions. The jury should have been allowed to
say how far, if at all, the evidence of this witness was colored
by bias or prejudice against the accused. It is always the right
of the accused to show that any witness introduced against him is
influenced by prejudice. It is the province of the jury to pass
upon the weight and value of evidence, and in doing so they are
authorized to consider the temper, feeling or bias of a witness
in making up their judgment as to the weight to be attached
to his evidence.

Instruction No. 1, given for the Commonwealth, is in these
words: " The court instructs the jury that, if they believe from
the evidence that H. G. Wadley wrongfully and fraudulently
used, disposed of, concealed or embezzled any money, bill, note,
check, order, bond, draft, or any other property of the Wythe-
ville Insurance and Banking Company, as charged in the indict-
ment, that came into his possession or was entrusted to him by
virtue of his office as president of the said company, with inten-
tion to wrong and defraud said company, and thereby render it
unable to meet its obligations, then they will find him guilty."

The language in the instruction which is objected to as mis-
leading and prejudicial to the prisoner is as follows: " With the
intention to wrong and defraud said company, and thereby
render it unable to meet its obligations."

The ability or inability of the company to meet its obligations
had nothing to do with the issue before the jury. It is as much a

crime to embezzle the funds of a solvent as of an insolvent company. We do not see, however, that the prisoner could have been prejudiced. The effect of the language is rather to impose an additional burden upon the prosecution by telling the jury that the Commonwealth must not only prove an intention to defraud the company, but must also prove the inability of the company to pay its debts. The language objected to should be omitted upon another trial.

. Instruction No. 3, asked for by the prisoner, was in these words: "Before you can convict the prisoner under any count of the indictment against him you must believe beyond a reasonable doubt that he feloniously took, appropriated, disposed of, or converted to his own use the property, or some part thereof, therein mentioned—that is, that he did so with a criminal intent, and not under an honest belief that he had a *bona fide* claim of right to do so."

This instruction was modified by striking therefrom the words, "and not under an honest belief that he had a *bona fide* claim of right to do so."

If there was evidence to support the instruction, as asked for, it should have been given. In embezzlement, there must be a fraudulent purpose to deprive the owner of his property and appropriate the same. If property is converted under a *bona fide* claim of right, the conversion is not embezzlement. If, therefore, upon another trial, there should be evidence tending to show that the prisoner acted under an honest belief that he had a *bona fide* claim of right, Instruction No. 3, as asked for, must be given.

Without commenting in detail upon the instructions given, both for the Commonwealth and the prisoner, it is sufficient to say that, subject to what has been already said with respect thereto, they are free from objection and fairly present the law of the case, so that the jury could not have been misled or the prisoner prejudiced thereby.

It is not necessary to prolong this opinion to consider the remaining assignments of error. They are, either clearly without merit, or raise questions that are not likely to arise on another trial.

For these reasons the judgment of the County Court must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial, to be had in accordance with the views expressed in this opinion.

*Reversed.*