State v. Scott.

## THE STATE v. SCOTT, Appellant.

### In Banc, March 4, 1903.

1. **Rape:** LACERATION OF PARTS: REMOTENESS OF EXAMINATION. Testimony of physicians that they had, four months after the alleged rape on a child under fourteen years old, examined her private parts and found the hymen destroyed and a laceration of the tensor vagina muscle which had not united, was competent for the purpose of showing that there had been a penetration, and for that purpose it was not too remote.

2. ———: EVIDENCE OF OTHER ACTS: ELECTION. Proof of other acts of copulation with the prosecutrix or attempts to commit the same offense recently before the commission of the act for which defendant is on trial, is competent, as throwing light on the question of his guilt of the particular act charged, and where such testimony has been introduced the court should overrule a motion to compel the State to elect on which of the specified acts is will rely.

3. ———: PERPETRATED CRIME: CONVICTION OF ATTEMPT. Since the Missouri statute (sec. 2361, R. S. 1899) provides that "no person shall be convicted of an assault with an intent to commit a crime ., . . when it shall appear that the crime intended . . . was perpetrated by such person at the time of such assault," one who has actually committed rape on a girl less than fourteen years of age can not be convicted of an assault to commit rape, and if the evidence shows that the rape was fully committed or no crime at all, it is error to submit to the jury the question of assault with intent to commit a rape.

4. ———: ———: ———: FAILURE TO PROVE COMPLETED CRIME. The rule set out in syllabus 3 does not change the generally accepted doctrine that under an indictment for rape the defendant may be convicted of an assault to commit a rape if the evidence fails to show the offense of rape was consummated.

Appeal from Hickory Circuit Court.—*Hon. Argus Cox,* Judge.

REVERSED AND REMANDED.

*J. W. Montgomery, F. M. Wilson* and *Rechow &
Pufahl* for appellant.

Section 2361, Revised Statutes 1899, is susceptible
of but one construction and that is that if a man stands
indicted for murder or any other homicide, and the evi-
dence upon the trial shows the party to be dead from
the assault made, then there can be no conviction for
an assault, notwithstanding there must of necessity
have been an assault, and in fact was an assault to pro-
duce the death. It might be said that every felonious
killing involves an assault. We cannot believe that this
court in the case suggested would permit a verdict of
felonious assault to stand and the party dead. But we
are not left to our construction. This court in the case
of the State v. White, 35 Mo. 500, in which this identical
section was before the court, gave it the construction
contended for by us, and, indeed, as it seems to us, the
only construction of which it is susceptible. It will be
noted that in the White case the indictment was for
rape in one count and an assault with intent in the
other. Again this same question was before this court
in the case of the State v. Lacey, 111 Mo. 513. In this
case under the evidence the defendant was either guilty
of rape or nothing, and this court has held that in-
structions authorizing a conviction for a lesser offense
are erroneous. State v. Punshon, 124 Mo. 449; State
v. Starr, 38 Mo. 272; State v. Wilson, 88 Mo. 19; State
v. Turlington, 102 Mo. 962; State v. Mahly, 68 Mo. 318.

*Edward C. Crow,* Attorney-General, and *Sam B.
Jeffries,* Assistant Attorney-General, for the State.

(1) No brief has been filed in this case on the
part of appellant. We, therefore, are forced to ex-
amine the bill of exceptions and motions for new trial
and arrest of judgment for errors relied upon by ap-
pellant as grounds for reversal. The first reason set
out in the motion for a new trial is that, "The court
erred in overruling the defendant's motion to require

the State to elect upon which particular charge upon the evidence the State would seek to convict.'' The court ruled properly. State v. Thornton, 108 Mo. 640; State v. Patterson, 88 Mo. 88; State v. Baxfield, 81 Mo. 151.. (2) The court fully instructed the jury upon all the law of the case. The jury was instructed as to the essential elements constituting the crime with which he was charged. It was told that in law a girl, under fourteen years of age, is incapable of consenting to an act of intercourse; that if found guilty beyond a reasonable doubt the punishment would be death or imprisonment in the penitentiary at not less than five years, and that it was immaterial whether the act was committed on the date charged in the indictment or on some other date. They were also instructed as to the law on the question of an assault with intent to commit a rape, of which defendant was convicted. The evidence shows defendant to be guilty beyond question. The testimony of the prosecutrix is corroborated by proof of confession and the condition of the girl. The point is not raised in the motion for new trial as to sufficiency of the evidence to support the verdict. It, therefore, becomes unnecessary to discuss that proposition.

GANTT, J.—On August 26, 1901, the prosecuting attorney of Hickory county began this prosecution by filing in the office of the clerk of the circuit court an information verified by his official oath, charging the defendant with rape upon Laura Huffman, a female child under the age of fourteen years. The offense was alleged to have been committed on March 6, 1901. A plea of not guilty was entered upon his arraignment and defendant put upon trial and found guilty of an assault with intent to commit rape and his punishment assessed at two years in the penitentiary. The defendant and the father of the prosecutrix lived on adjoining farms, in Hickory county, about one-half mile apart. The prosecutrix was about twelve years old and was living in her father's family. The two fam-

ilies were related, and up to the time the complaint was first filed against defendant, in this case, the most friendly relations existed between them. The evidence discloses that on various occasions when defendant intended to be absent on business or on hunting expeditions which would keep him out late at night he was in the habit of requesting the prosecutrix and her sisters to stay with his wife, with the consent of her parents. It further appears that defendant would not return from his hunting trips until midnight and sometimes nearly daylight the next morning.

The evidence tends to show that defendant began to take improper liberties with the prosecutrix on one of the occasions when she slept at his house, by coming into her room next morning before she had arisen. In the latter part of the winter or the early spring of 1901, defendant came to Mr. Huffman's, the father of the prosecutrix, and said he was going on a turkey hunt that night and wanted prosecutrix to go and stay with his wife, and she went with him and stayed that night. She slept in one bed and defendant's wife in another in the same room. Defendant returned about midnight and went to bed with his wife. Prosecutrix testifies that later in the night she was awakened by defendant, again taking improper liberties with her person and finally attempting to have intercourse with her, but on that occasion failed. She testified she knew this was all wrong but she was ashamed to tell his wife or her parents.

On March 6, 1901, he went on another turkey hunt and prosecutrix and her sister, Beulah, went to stay with his wife and went to bed and slept. She was again aroused from her sleep by defendant feeling her person and found him in bed with her. She made no outcry and on that occasion he accomplished his purpose. On another occasion Minnie Huffman, an older sister, went with prosecutrix to the home of defendant, because her mother and father were absent on a visit, and her brother had gone to a lodge meeting at Cross Timbers. Defendant had gone hunting that night and

came in late and when she waked she found defendant in the bed with her and her sister the prosecutrix. When her brother came from the lodge she went home with him. Two physicians testified to an examination of the prosecutrix and found the hymen destroyed and her private parts lacerated. When defendant was arrested, he was placed at his request under guard till his examination before the justice. Bent Ihrig, a deputy constable was the guard. At defendant's request Ihrig took defendant to his home on Monday. Ihrig testified that soon after starting out of town on this trip he said to defendant, "You have got yourself into a right smart little trouble, it seems like," to which defendant replied he didn't think they could do anything with him. "They will just cause me a little trouble is about all." "If I did, she was willing," or words to that effect. The guard expressed the opinion that the girl's age was what would hurt him, but defendant thought if she was willing it was all right.

There was much controversy as to the exact date of the offense, the defendant introducing various witnesses to show it could not have occurred on the 6th of March, and the State a number to show that it occurred on the night of a party at a neighbor's, Mr. Smith's, which several witnesses fixed quite definitely as March 6th.

No effort was made to impeach the previous good character or general reputation of the prosecutrix for truth and veracity, to show any unfriendly feelings as the basis of the charge, but the defendant contradicted her evidence, and his wife testified that the act could not have occurred as detailed by prosecutrix without waking her as she slept in the same room with the prosecutrix.

An effort was made to impeach the witness Ihrig by showing his general reputation for truth and veracity was bad, but it appears to have been unsuccessful as the weight of the evidence on that point tended to show it was good.

A reversal is sought on various grounds which we now proceed to examine.

I.   The circuit court over the objection of defendant permitted the State to prove by two physicians, Drs. Curl and Harley, that they made an examination of the private parts of the prosecutrix about the first of July, 1901, and found the hymen destroyed and a laceration of the tensor vagina muscle which had not yet entirely united.

The objection is that this evidence was too remote, and counsel rely upon the decisions in State v. Houx, 109 Mo. 654, and State v. Evans, 138 Mo. 125, as sustaining their contention.

In State v. Houx, supra, the objectionable evidence in no way tended to prove the perpetration of the offense, but was in response to an inquiry as to the condition of the girl's health after the commission of the offense, and the witness was allowed to state that his daughter lingered for three months and would take spells, and in commenting on this evidence, Judge MAC-FARLANE, who wrote the opinion, said, "Its only effect could have been to show an aggravation of the offense, and excite abhorrence in the minds of the jury, and thereby increase the punishment." It is obvious that the evidence in this case had no such purpose in view, but was directed solely to the ascertainment of whether there had been in reality an outrage committed on the child, Laura.

Neither of the physicians was called upon to detail her probable suffering after the injury, save in response to inquiries propounded by defendant's counsel, who insisted on proving that it would have been so painful that she necessarily would have cried out and thus aroused defendant's family.   The medical witnesses were called simply to show the vagina had been penetrated and the parts lacerated, and they had no hesitancy in testifying such were the facts.   It was simply a fact but not a conclusive one, tending to prove that the child had been raped.   And in the light of the medical evidence we think it was competent evidence,

and its remoteness, for the purpose it was offered, no ground for excluding it.

In State v. Evans, 138 Mo. 125, the incompetency of the evidence rested not merely on lapse of time, but upon a concurrence of the time and the age of the prosecutrix. In that case the question was whether the female was under fourteen when the sexual commerce took place. The evidence showed that she was fourteen on the twenty-ninth day of May, 1895, and the circuit court permitted the physician to testify to an examination made by him in September, 1895. The alleged rape was on August 3, 1894, and it was ruled that as four months had elapsed since the female had reached the age of consent, the mere destruction of the hymen would not have proved copulation while she was under fourteen years any more than after that time, and unless it tended to prove intercourse while under the age of consent, could not have sustained a conviction on the indictment in that case. Moreover, in that case the intercourse was shown to have taken place in July and August, 1894, and the examination was made in September, 1895, over thirteen months after the alleged rape and long after the female had reached the age of consent. That case is in no sense a parallel to this, or authority for the contention of counsel. In this case, the proof related entirely to a period when the female was under fourteen years of age, and according to the evidence of the medical men, the evidence of the laceration was still apparent.

II. The motion of defendant to require the State, at the conclusion of the testimony, "to elect as to which of the specific acts it will rely on in this case" was properly overruled. The indictment charged the offense to have been committed on March 6, 1901, and the proof of the other acts of defendant was competent to show upon the question of his guilt that he had made attempts to commit the same offense recently before the commission of the act for which he was on trial. [People v. Jones, 99 N. Y. 667; People v. O'Sullivan, 104 N. Y. 483.]

The charge in the indictment clearly referred not to the previous ineffectual attempts of defendant to have carnal connection with the prosecutrix, but to the completed offense on March 6, 1901, and there was nothing requiring the State to elect.

III.  In the divisional opinion it was ruled that defendant could not complain that he was convicted only of an assault to commit rape even though the evidence disclosed he was guilty of the completed offense, and reference was had to section 2369, Revised Statutes 1899, and various cases in other jurisdictions holding that on an indictment for rape a defendant may be convicted of an assault to commit a rape.   But it was overlooked that in those States there was no statute like section 2361, Revised Statutes 1899, of this State, which provides that "no person shall be convicted of an assault with an intent to commit a crime, or of any other attempt to commit any offense, when it shall appear that the crime intended or the offense attempted *was perpetrated* by such person at the time of such an assault or in pursuance of such attempt." This section unquestionably is a modification of the common law in criminal cases as announced by Wharton (1 Wharton's Crim. Law, sec. 641), in which he lays it down that on an indictment for a major offense there may be a conviction of a minor, for the reason that the State may elect to prosecute for the minor offense provided always the minor is included in the major, and falls within the allegations of the indictment, and in many States it has been expressly ruled that an assault with intent to commit a rape is included in every rape, and a defendant may be convicted of an assault to commit rape, though the proof establishing the defense of rape was complete. [People v. Miller, 96 Mich. 119; Hall v. People, 47 Mich. 636; State v. Shepard, 7 Conn. 56; Com. v. Cooper, 15 Mass. 187; Polson v. State, 35 N. E. 907.]

The difficulty in reconciling this section with section 2369, Revised Statutes 1899 (then section 3949, R. S. 1889), was encountered in State v. Lacey, 111 Mo.

513, and it was there said: "This section is not in conflict with section 3949, Revised Statutes 1889 [now section 2369, R. S. 1899] of our Criminal Code authorizing a conviction for any degree of the offense inferior to that charged in the indictment; nor with section 3950, Revised Statutes 1889 [now section 2370, R. S. 1899] authorizing a conviction for a less offense where the charge is for an assault with intent to commit a felony, and authorizing the jury in all cases to find the accused guilty of 'any offense, the commission of which is necessarily included in that charged against him.' " Judge THOMAS concluding by saying, "In view of the two sections last cited, we see no reason for the existence of section 3941 [now section 2361, R. S. 1899], but that is no reason why this court should nullify or ignore it."

We followed in that case a previous decision of this court in State v. White, 35 Mo. 500, in which the same conclusion was reached in construing this same section, at that time section 2 of article 9, Revised Statutes 1855, page 637.

We may add that this construction does not in any manner prevent the conviction of one charged with murder in the first degree of murder in the second degree, or of manslaughter in any degree which is supported by the evidence, or of grand larceny on an indictment for robbery, nor does it prevent a conviction of any completed offense on an indictment therefor even though the indictment might have been for another and greater offense and the evidence would have sustained such indictment, as was ruled in State v. Hamey, 168 Mo. 167.

Neither does it change the generally-accepted doctrine that under an indictment for rape the defendant may be convicted of an assault to commit a rape, if the evidence fails to show the offense of rape was consummated, but section 2361, Revised Statutes 1899, is necessarily limited by its terms to those cases in which "it shall appear that the crime intended or the offense attempted was perpetrated," or fully consummated.

If, therefore, under an indictment for rape or other felony the evidence fails to show a perpetration of the offense charged, but does establish an assault necessarily included in the charge, the defendant may still be convicted under the charge for the major offense, and we may add that if the evidence is conflicting, and there is testimony to sustain the completed offense and evidence tending to show that it was only an assault, it is the duty of the court by appropriate instructions to inform the jury that if the evidence satisfies them beyond a reasonable doubt that the offense of rape or other felony was in fact perpetrated then they must find him guilty of the offense charged and are not authorized to find him guilty of an assault merely, but if on the other hand the jury are satisfied beyond a reasonable doubt that the offense was not perpetrated but that an assault to commit the same was committed, then they should find him guilty of an assault.

But if, as in this case, the only evidence of an assault to commit a rape is that which shows the crime was fully perpetrated, it falls within section 2361, Revised Statutes 1899, and it is error to submit the question of assault with intent to commit a rape.

This court has on more than one occasion ruled not only that it was error to submit to the jury a grade of offense of which there was no evidence, but that it was beyond the power of the Legislature to compel the courts to submit to the jury an offense or grade of an offense which the evidence did not tend to establish. [State v. Hopper, 71 Mo. 425.]

Now in this case without the testimony of the prosecutrix there could have been no conviction either of rape or assault to commit rape, but if credit is to be given her evidence then the crime of rape was fully consummated and there was not merely an assault to commit the offense, and hence it follows that it was error under section 2361, Revised Statutes 1899, to have instructed on an assault to commit rape, and error to

Vol 172 mo—35.

have permitted the verdict of guilty of an assault to stand. It results that the judgment must be reversed and the cause remanded for a new trial in accordance with the views herein expressed.

All concur.