### WIMBERLEY v. STATE. (No. 7284.)

(Court of Criminal Appeals of Texas. April 18, 1923.)

**1. Criminal law ⟨⟩419, 420(1)—Sheriff's testimony as to where still was found held hearsay.**

In a prosecution for manufacturing intoxicating liquor, where the sheriff testified that when he returned to his car, after finding a furnace, some mash, jugs, etc., on defendant's brother's place, one of the party accompanying the officers had found a still and brought it to the car, but did not claim that the place where the still was found was pointed out to him, his testimony as to where it was found was incompetent as hearsay.

**2. Criminal law ⟨⟩598(2)—No diligence shown by application for continuance to procure testimony of absent witnesses.**

Where it was not shown that a subpoena had been issued for one of several absent witnesses or that process had been issued promptly for any of the others, an application for a continuance to procure their testimony showed no diligence.

**3. Witnesses ⟨⟩267—Refusal to permit further cross-examination of prosecuting witness as to where he had lived, etc., held not abuse of discretion.**

In the absence of any showing that defendant, after being allowed to cross-examine prosecuting witness as to his recent movements, expected, by further cross-examination as to where he had lived, etc., to show that he had engaged in any occupation or lived at any place indicating moral turpitude or that he was unworthy of credit, the court did not abuse his discretion in refusing to permit further cross-examination.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Indictment and information ⬦⟹130—Indictment charging kindred offenses in separate counts, not duplicitous.**

. An indictment charging kindred offenses in separate counts is not duplicitous.

**5. Criminal law ⬦⟹390—Testimony as to prosecuting witness' motives in reporting defendant to arresting officers held admissible.**

Where prosecuting witness admitted that defendant and his brother had beaten him up just before he reported to the arresting officers ' the presence of a still on defendant's brother's land, and attempted no explanation of the fight or its cause, the appellate court cannot say that his motives could not be explored by testimony that his improper conduct with his niece, who was also related to defendant and his brother, caused them to administer the beating.

**6. Criminal law ⬦⟹665(2)—Rebuttal testimony of witness present during trial, though rule had been invoked, held admissible.**

In a prosecution for manufacturing intoxicating liquor, where prosecuting witness' wife testified, to defendant's surprise, that a bottle of whisky found on defendant's brother's premises after defendant's arrest was hidden there by a female relative of defendant, such relative's testimony that the bottle was hidden by prosecuting witness' wife, who got it out of his car, was admissible, though such relative, notwithstanding the fact that the rule had been invoked, had been in the courtroom during the trial.

Appeal from District Court, Llano County; J. H. McLean, Judge.

John Wimberley was convicted of manufacturing intoxicating liquor, and he appeals. Reversed and remanded.

T. H. McGregor and A. L. Love, both of Austin, for appellant.

W. A. Keeling, Atty. Gen., and C. L. Stone, Asst. Atty. Gen., for the State.

LATTIMORE, J. Appellant was convicted in the district court of Llano county of manufacturing intoxicating liquor, and his punishment fixed at one year in the penitentiary.

From the testimony of one B. M. Mays we learn that a still was in operation on the premises of Dick Wimberley. Appellant lived on an adjoining farm. Mays testified that he first saw this still on Thursday, February 17, 1922, on which occasion he went to where same was with Dick Wimberley to get some chops for the latter's hogs. No one seems to have been at the still on this visit. Mays testified that he went back there the Saturday morning following, and Willie Wimberley was there "with the can cooking whisky." Witness stayed 30 or 40 minutes, and says that while he was there appellant came from a nearby field in which he was plowing; that appellant sat down and took a drink of whisky and went back to his plow. Willie Wimberley was sitting over,

by a tub with a half-gallon measure, and "the stuff" was running into it. Witness testified that while there appellant said "it was good whisky we are making." On cross-examination Mays admitted that he had testified in cases already tried against Willie and Dick Wimberley, and that he did not recollect that in either trial he had attributed to John Wimberley the statement just mentioned. He also admitted that in each of said cases he swore that while he was at the still appellant came down and just sat around and was not doing anything and went on back to his plowing.

[1] On Tuesday morning following the visit to the still just described this witness admitted that appellant and Willie Wimberley beat him up pretty badly, John Mays, a brother of witness, being present, and that at once after the fight witness went and phoned the officers at Llano, 12 miles distant, who came out in about an hour. Search by the officers revealed on Dick Wimberley's place several barrels partly filled with mash, some jugs, cans, funnels, several sacks of corn chops, and a furnace made of bricks and rocks, with a stovepipe, and having over the furnace a piece of iron with a hole in it. Others of the party who went with the officers found what they called a still, in a sack in a thicket, tree limbs having been thrown over it. This was found by means of information given by John Mays. No witness attempts to locate the place where this still was found except Mr. Johnson, the sheriff; his testimony plainly showing it to be hearsay in this regard. He swore that when he got back to his car after finding the furnace, etc., on Dick Wimberley's place, Fred Jackson had already found the still and brought it to the car. He does not claim that any one pointed out to him the place where the still was found. It follows that the statement of the sheriff as to whose land the still was on when found would necessarily be hearsay. Fred Jackson was not asked on whose place he found the still.

We thus have the case against this appellant for manufacturing intoxicating liquor resting solely on the proximity of his farm to the one occupied by his brother Dick Wimberley, on whose farm there was a liquor factory, and the testimony of B. M. Mays that appellant came to where said still was in operation, sat down, took a drink, said that was good whisky we are making, got up, and went back to his plowing. This statement attributed to appellant by Mays is so ambiguous as it appears in this record that it is impossible to tell whether said witness intended to say that appellant said that witness and Willie Wimberley were making good whisky, or that it was good whisky appellant and witness were making, or that it was good whisky appellant and Willie Wimberley were making. We cannot afford

to be careless about a matter on which depends a felony conviction of a citizen of this state. Aside from this statement just referred to, the record is devoid of legal testimony sufficient to support a conviction. If the testimony of Mr. Johnson be accepted, which is not according to law, the can in which whisky had been cooked, or the worm through which it had run (we are not informed what the witness meant when he used the word "still"), was found in a sack under some tree limbs in a thicket on appellant's place. A day or two before such finding it was in operation on the place of Dick Wimberley. Evidently it was not operated on appellant's land, and, if found on his land, as appears in the hearsay statement of the sheriff, it was put there by some one for hiding, by whom we are not informed. No liquor was found on appellant's farm, no mash, no signs or evidences of liquor manufacturing except the still found in the sack. No one bought any liquor from him. He tried to sell none. No one saw him bring wood, water, chops, or anything used in liquor manufacture. B. M. Mays alone testified that appellant came from where he was plowing to the point on Dick Wimberley's farm where Willie Wimberley was making whisky. If coming there made him guilty, it would also make state witness Mays guilty, for he went there by himself. If sitting down made appellant guilty, it also made Mays guilty, and likewise the taking of a drink of the whisky. The only thing in the testimony of Mays possessing evidential value bearing on appellant's guilt is the statement which we discussed above. The ambiguity of the language and the fact further evidenced by the record that this witness had gone over this same occurrence in two other trials, given two recitals of this transaction, and now admits that he cannot recollect whether he had mentioned this statement before, causes us to have a great hesitation in accepting the testimony as sufficient to support the verdict. B. M. Mays was of kin to the Wimberleys, had enjoyed their hospitality, drank their whisky until for a reason not disclosed John and Willie Wimberley beat him up, and then he reports them and gives testimony upon which apparently John, Dick, Ike, Willie, and Andrew Wimberley, four nephews and a brother-in-law of Mays, were indicted.

Whisky manufacture is an evil and a grave one, and a violation of the law. So many of the good men of this state have for years been striving to rid the country of the curse of intoxicating liquor that it seems difficult to as calmly weigh the evidence in a case of this character as would be done in other felony cases. We must do so.

[2] We do not think the application for continuance by appellant showed diligence. It is not shown that a subpœna had been issued in this case for the witness Iva Wimberley; nor had process been issued promptly for any of the other absent witnesses.

[3] Appellant was allowed to cross-examine B. M. Mays as to his recent movements, but the state's objection to extended cross-examination as to where he had lived, etc., was sustained. The bill of exceptions does not show that appellant expected to obtain facts by further examination along this line showing that witness had engaged in any occupation or had lived at any place either of which indicated moral turpitude, or that he was by reason thereof unworthy of credit. While we fully appreciate the value of the right of cross-examination into the antecedents of a witness, still a reasonable limit must be set, and we do not think that fixed by the learned trial court in the instant case any abuse of his discretion.

[4] An indictment charging kindred offenses in separate counts is not duplicitous.

[5] State witness Mays admitted that just before he phoned for the officers appellant and Willie Wimberley had beaten him up. He denied that this fight and the beating he got actuated him in reporting appellant or influenced him while a witness. He attempted no explanation of said fight or its cause or why same occurred. Appellant sought to show that said witness was guilty of an attack upon and improper conduct with his niece Ruby Mays on the night before the fight took place, and that his said conduct caused the Wimberleys, who were also related to said girl, to administer to him said beating. We are not prepared to say that the motives of B. M. Mays might not have been thus explored. Mr. Branch cites many cases in section 163 of his Annotated P. C. upon the proposition that the motives of a witness are never to be regarded as merely collateral, and that any testimony which sheds light on the animus or prejudice of a state witness toward the accused is admissible.

[6] Evidence of the finding of a bottle of whisky on the premises of Dick Wimberley out in front of his house, after the arrest of appellant, was admitted on behalf of the state. The wife of B. M. Mays testified that she was with Pauline Wimberley when the latter took said bottle and hid it where the officers found it. Appellant offered as a witness Pauline Wimberley to show that the bottle of whisky was in fact hidden at said place by Alice Mays, who got it out of the car of B. M. Mays. The state objected to this testimony on the ground that the rule had been invoked, and that Pauline Wimberley had been in the courtroom during the trial. Appellant's counsel then stated that the testimony of Mrs. Alice Mays came as a surprise, and that they were not aware that she would so testify. Nothing is presented showing bad faith in this statement on the part of appellant's counsel, and we think the testimony should have been admitted.

For the errors above mentioned, the judgment will be reversed, and the cause remanded.