**STATE of Missouri, Plaintiff–Respondent**

v.

**James BOZEMAN, Defendant–Appellant.**

No. 27714.

Missouri Court of Appeals, Southern District, Division One.

May 17, 2007.

Nancy A. McKerrow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

James Bozeman (defendant) was convicted, following a jury trial, of burglary in the second degree. § 569.170.[1] Defendant was charged as, found to be, and sentenced as a persistent offender. *See* § 558.016.3. This court affirms.

During the early morning hours of December 11, 2003, Matthew Hewitt, a college student, was studying in his bedroom. The bedroom had an outside window that was about two and a half feet above the ground. Hewitt left the bedroom. About an hour later he returned, turned on a light, and saw defendant "hanging through [his] window." Defendant had Hewitt's laptop computer in his hands and was trying to unplug cords connected to it. Defendant dropped the laptop, turned, and left.

Hewitt went to the living room of his apartment and told his roommates someone had been "hanging through [his] window." Hewitt and his roommates went outside but did not find the intruder. Hewitt called the police. When he returned to his bedroom, Hewitt discovered that his wallet was missing. The wallet had been sitting on the desk where the laptop had been. The wallet contained cash, a blank check, driver's license, Hewitt's social security card, a debit card, and a credit card.

Hewitt recognized defendant but did not know his name at the time of the burglary. The day after the burglary Hewitt went to work. He told his supervisor, Michael Johnson, and another worker, Jeff Williams, about what had happened the night before. He described the intruder and said he remembered him as having been associated with Williams. Michael Johnson replied, "That sounds like Jimmy," meaning the defendant.

Defendant had worked for Johnson. Johnson knew defendant's name and social security number. He gave the information to Hewitt. Hewitt told the police. Later, at the police station, Hewitt looked at "a photo lineup." He picked defendant's picture from those he was shown and identified him as the intruder.

---

1. References to statutes are to RSMo 2000.

Defendant called two witnesses at trial, Police Officer Chris Rasmussen and Michael Johnson. Officer Rasmussen was the investigating officer who went to Hewitt's apartment the night the burglary was reported. He told of his observations and conversation with Hewitt that evening. He had no further involvement in the investigation.

At one time, Michael Johnson had employed defendant as a contract employee. Defendant had also lived with Jeff Williams, a friend of Johnson's. At trial, defendant's attorney asked Johnson if Jeff Williams told him that defendant had been stealing from Williams. Johnson answered that he had. Defendant's attorney then asked Johnson if Johnson was familiar with a nightclub called "Steps." Johnson answered, "Yes," after which the prosecutor objected "to the relevance of this line of questioning."

The trial judge stated that since the witness did not make a visual identification of the witness but provided a name and social security number that led to the identification, he would limit defendant's inquiry of Johnson to whether "he provided a name and Social Security Number" and whether Johnson disliked defendant "or something of that nature." The trial judge concluded that "going into the nightclubs and bad business deals" was not relevant. Defendant's attorney then made an offer of proof.

In the offer of proof, Johnson testified that he had been president of a corporation that started a nightclub called "Steps." He said that at the time the nightclub was operating, people had asked him about defendant's capacity with the club; that they told him defendant "was talking quite a bit about it." Johnson was asked if at any time he had thrown defendant out of the club. He answered that he remembered defendant being out in front of the club at one time asking to come in; that he told defendant he did not want him there. Johnson said defendant asked why and he replied that he did not like the way defendant was treating Johnson's friend Jeff. The offer of proof concluded with the following questions and answers:

Q. So you were displeased with him about the fact that you thought he was stealing from Jeff?

A. Yes.

Q. And would it be safe to say you were displeased with him about the way he was treating Jeff at the time Matthew Hewitt came and talked to you about this incident that happened at his apartment?

A. I don't remember the dates. There was this time between that, but I really don't think I felt one way or the other at that time.

The offer of proof was denied.

After the offer of proof, when trial resumed, defendant's attorney asked Johnson if he remembered Matthew Hewitt as an employee. The attorney asked Johnson if he recalled Hewitt discussing what had happened at Hewitt's apartment. Johnson remembered the discussion. Defendant's attorney asked if Johnson remembered, as a result of the discussion, having provided Hewitt with the name and social security number of defendant. Johnson answered that he did not remember, but it probably happened; that he was "probably the one that gave it to him."

The prosecutor then cross-examined Johnson. Johnson was asked about what Hewitt had told him. Johnson said he was told Hewitt's apartment had been burglarized; that a man had come into Hewitt's apartment through a window and attempted to steal Hewitt's laptop computer. Johnson said Hewitt had given him a physical description of the person and told him

the same person had been at Hewitt's apartment before; that the person had been associated with Jeff Williams. Johnson was asked if he "put that physical description together with the description of him being associated with Jeff Williams and came up with an idea of who it was." Johnson answered that he believed Jeff Williams, he, and Hewitt "came up with it."

Johnson was asked if he said something to the effect that it sounded like Jimmy. He said he believed he said it, or if he did not that Jeff said it. He said that the reference to "Jimmy" was, in fact, a reference to defendant. Johnson was asked if providing the name and social security number was based on the physical description he was given and the evidence that the burglar had been associated with Williams. He answered, "Yes."

Johnson was asked why defendant's employment with his business as a scorekeeper for sport events had not continued. He said the general manager was not comfortable with defendant's personality and appearance; that a lot of young kids were at the business and they tried to hire clean-cut people. He stated that there had been enough scorekeepers without defendant.

■ Defendant's sole point on appeal is directed to the trial court's denial of defendant's attempt to elicit testimony from Michael Johnson regarding Johnson's personal feelings about defendant. Defendant contends the trial court erred in not permitting him to inquire about Johnson stopping him from entering Johnson's business, Steps. He contends it was error not to permit his inquiry because it denied him the opportunity "to show ... possible bias and motive for telling Hewitt that [defendant] was the man who burglarized his home."

[T]he scope of the evidence allowable to show interest or bias and decisions on matters that may bear on a witness' credibility is largely within the discretion of the trial court. *State v. Dunn,* 817 S.W.2d 241, 245[12] (Mo.banc 1991); *[State v.] Bounds,* 857 S.W.2d [474] at 476[8] [ (Mo.App.1993) ]. Among the reasons for allowing trial judges wide latitude in their rulings on evidence that bears on witness credibility are concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant.

*State v. Butts,* 938 S.W.2d 924, 927 (Mo. App.1997).

Defendant relies on three cases in which there was error because defendants in criminal cases were not allowed to cross-examine witnesses about matters those defendants contended showed the witnesses were biased against them. *See State v. Thomas,* 118 S.W.3d 686 (Mo.App.2003), (defendant in a murder case was not permitted to cross-examine state's only eye witnesses about criminal cases pending against those witnesses); *State v. Summers,* 506 S.W.2d 67 (Mo.App.1974), (trial court unreasonably restricted cross-examination directed at credibility of three accomplices the state relied on to make its case); and *State v. Pigques,* 310 S.W.2d 942 (Mo.1958), (trial court did not allow owner of business in attempted burglary case to be cross-examined about disputes he had with defendant, an employee of the business, concerning that defendant's wages).

This case differs from each case defendant cites. In this case Johnson did not testify for the state—he was called as a witness for defendant. Johnson had no proprietary interest in the property where the burglary occurred. In addition, defendant's statement in his point on appeal that Johnson was the person who told Hewitt defendant committed the burglary

is inaccurate in that what Johnson did was listen to the description of the burglar, including that Hewitt had seen the individual before and knew that the person he saw had been an associate of Jeff Williams. Johnson did not identify defendant as the burglar, but upon hearing the description, stated the opinion (or participated in a discussion that led to the statement) that it sounded like defendant fit the description Hewitt gave. The police assembled a photo lineup that included a picture of defendant. Hewitt was shown the pictures by the police and identified defendant as the burglar.

The jury heard evidence apart from the evidence to which defendant's point on appeal is directed relative to Johnson's unfavorable view of defendant. The trial court did not abuse its discretion in denying defendant's request to present the evidence in question. Defendant's point is denied. The judgment is affirmed.

RAHMEYER, P.J., and SCOTT, J., concur.